United States District Court
Southern District of Texas
**ENTERED**
March 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Sherry Renee Smith, § § *Plaintiff*, § § v. § § Kilolo Kijakazi, Acting § Commissioner of Social Security, § § *Defendant*. § | Case No. 4:21-CV-03225 |

## **MEMORANDUM AND RECOMMENDATION**

This challenge to the denial of social security disability benefits was referred to the undersigned judge. Dkt. 10. After carefully considering the parties' cross-motions for summary judgment, Dkts. 14, 15, the briefs filed in support, Dkts. 14-1, 16, responses, Dkts. 17, 19, the record, Dkt. 7, and the applicable law, it is recommended that Defendant Kilolo Kijakazi's motion for summary judgment be granted, Dkt. 14, and that Plaintiff Sherry Renee Smith's motion be denied, Dkt. 15.

## **Background**

Smith worked as a department manager at Walmart until May 2016. R.42, 253.[1] She contends that she lost her job because she missed too much

---

[1] The administrative record is found in Dkt. 7 and is cited herein by the Bates-numbers at the bottom of each page.

1

work, *see* R.49, although some records indicate she quit that job to care for her husband who had ALS, *see* R.526, 633. Smith maintained that she suffers from post-traumatic stress disorder (PTSD), panic disorder, anxiety, depression, and irritable bowel syndrome (IBS), and high blood pressure. R.18. She has endured many losses, including her house burning down in 2008, her daughter being killed in a car accident in 2009, and her son dying in a motorcycle accident in 2014. R.50. She also lost her husband in late 2017, and her father for whom she provided care, R.631, died in May 2019. R.13, 492.

In August 2020, Smith filed an application for social security benefits and an application for disabled widow's benefits with the Social Security Administration (SSA), alleging a disability onset date of May 31, 2016. R.12. The SSA initially denied Smith's applications. R.125-28. Smith sought reconsideration, which was denied. R.135-36. Smith then obtained a hearing before an administrative law judge (ALJ). R.144; R.38-54 (hearing transcript).

In May 2021, the ALJ issued a decision concluding that Smith did not qualify as disabled under the Social Security Act. R.12-26. The ALJ used a five-step sequential evaluation process when considering Smith's case. R.13. For the first two steps, the ALJ determined that Smith had not engaged in substantial gainful activity since May 31, 2016, and she had the following "severe impairments": depression, anxiety, PTSD, obesity, and inflammatory

2

bowel syndrome (IBS).[2]  R.15.  At step three, the ALJ determined that these impairments did not meet or medically equal a listed impairment, which meant that Smith was not presumptively disabled.[3]  R.15-16.

The ALJ then determined Smith's residual functional capacity ("RFC"). *See* R.17.  After considering all of Smith's symptoms to the extent they "could reasonably be accepted as consistent with objective medical evidence and other evidence" in the record, as well as the medical opinions and prior administrative medical findings, the ALJ determined that Smith has an RFC to perform medium work but is limited to a simple routine, one to three tasks with no fast-paced production work, and only brief or superficial interaction with the public and occasional interaction with coworkers and supervisors. R.17-18.  At step four, the ALJ determined that Smith could not perform her past relevant work, and at stage five, concluded that there were jobs that exist in significant numbers in the economy that Smith can perform—in particular,

---

[2] The ALJ found that Smith's other impairments—hypertension, rapid heartbeat, tremors, and migraines—were not severe.  R.15.  Smith does not challenge those findings.

[3] The ALJ also found that Smith's inflammatory bowel disease (IBD) did not meet the listing requirements.  R.15-16.  Regarding Smith's obesity, the ALJ noted that physicians did not state it was disabling, but the ALJ still considered "whether her obesity alone or in combination with other impairments" caused work-related physical limitations.  R.16.  Smith does not dispute these findings.  *See* Dkt. 16.

positions as a retail stocker, laundry worker, or hospital cleaner. R.24-25. Thus, the ALJ concluded that Smith was not disabled. R.26.

Smith appealed, and on July 19, 2021, the Appeals Council denied the request for review. R.1-5. Smith subsequently filed this action appealing the final administrative decision pursuant to 45 U.S.C. § 405(g). Dkt. 1.

## Standard of Review

This Court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is enough that a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). It is "more than a scintilla, but it need not be a preponderance." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192

F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which the ALJ uses to evaluate steps four and five. *Id.* at 776 n. 2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden

of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. Substantial evidence supports the ALJ's RFC finding.

Smith's challenges pertain to the ALJ's formulation of the RFC and only with respect to her mental limitations. An applicant's RFC is defined as "the most [an applicant] can still do despite [her] limitations." 20 C.F.R. § 404.1545. "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); see also 20 C.F.R. § 404.1527(d)(2) (Commissioner has the final responsibility for opinions, including the RFC). In determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record").

According to Smith, the ALJ's finding in the RFC that she can perform medium work with some limitations is not supported by substantial evidence. Dkt. 16 at 8-14. First, she maintains that the ALJ improperly formed the RFC based on his lay interpretation of medical data because he had rejected the only functional opinions in the record. *Id.* at 9-11. Second, Smith contends

that the ALJ failed to adequately explain why he deemed unpersuasive the medical opinion of Dr. Alvarez-Sanders. *Id.* at 12-14. And third, Smith argues that the RFC did not properly account for Smith's inability to handle stress due to her mental illness. *Id.* at 12 (relying on Social Security Ruling 85-15).

The Commissioner responds that substantial evidence supports the ALJ's RFC assessment, including that (1) Smith inaccurately characterizes the ALJ's findings about the medical opinions, and that the RFC was properly based on the record as a whole; (2) the ALJ properly explained why Dr. Alvarez-Sanders' opinion was unsupported by and inconsistent with her own findings; and (3) the ALJ did assess Smith's ability to cope with stress. Dkt. 17 at 3-7.

### A. The ALJ properly evaluated the evidence.

Smith contends that the record contains only two functional opinions regarding her mental conditions—from Dr. Connie Alvarez-Sanders and from state agency medical consultants, Dr. Richard Campa and Dr. Miller Logan— and the ALJ rejected both as unpersuasive. Dkt. 16 at 9. The Court addresses the ALJ's rejection of Dr. Alvarez-Sanders's opinion first before turning to the impact of that and other findings on Smith's RFC.

> 1. *The ALJ adequately explained why Dr. Alvarez-Sanders's opinion was partly unpersuasive.*

According to Smith, the ALJ "did not consider the consistency of Dr. Alvarez-Sanders' opinion" and therefore violated 20 C.F.R. § 404.1520c(b)(2).

7

Dkt. 16 at 13-14. Under that regulation, an ALJ must address the "supportability" and "consistency" of a medical source when determining its persuasiveness. *See* 20 C.F.R. § 404.1520c(b)(2). The "supportability" factor examines the relevance of the "objective medical evidence and supporting explanations presented" by the source. *Id.* § 404.1520c(c)(1). For the "consistency" factor, the persuasiveness of a medical source depends on how closely it tracks "evidence from other medical sources and nonmedical sources in the claim ...." *Id.* § 404.1520c(c)(2). The Commissioner argues that the ALJ sufficiently addressed these points, Dkt. 17 at 6-7, and the Court agrees.

As a threshold matter, the Commissioner correctly notes that Smith has inaccurately depicted the ALJ's findings about Dr. Alvarez-Sanders' opinions. *See* Dkt. 17 at 3. Far from rejecting the findings outright, ALJ found persuasive Dr. Alvarez-Sanders's findings that Smith can follow simple oral directions as well as multi-step directions. R.23; R.475. The ALJ also noted Dr. Alvarez-Sanders' finding that Smith's "mental status examination was unremarkable with the exception of mood and affect." R.23; *see* R.474. And as the report notes, Smith's memory, concentration, judgment, and insight were average, which Dr. Alvarez-Sanders concluded—and the ALJ agreed, R.24—would limit Smith to simple work. R.475.

The portion of Dr. Alvarez-Sanders' report that the ALJ rejected concerned the opinion that Smith would likely have "significant difficulty dealing with everyday pressures and stress in a work environment ...." R.24 (quoting R.476). The ALJ found this opinion unpersuasive for several reasons.

First, Dr. Alvarez-Sanders appeared to rely on Smith's self-reported description of her symptoms, at a one-time examination, rather than on Dr. Alvarez-Sanders' own findings listed above or Smith's medical records. R.23. This means the ALJ found the opinion to be unsupported by objective medical evidence—one of the criteria specified in the regulation.  20 C.F.R. § 404.1520c(c)(1).

Second, the ALJ noted that Dr. Alvarez-Sanders provided no definition for, nor did she elaborate upon, what she viewed as Smith's "significant difficulty" coping with ordinary stress in a work environment. R.24. The inadequacy of her explanation provided a proper basis for concluding that Dr. Alvarez-Sanders' opinion is unsupported. *See* 20 C.F.R. § 404.1520c(c)(1).

Third, for the consistency prong of the analysis, the ALJ noted that the medical evidence, including Smith's "activities of daily life reported to her providers," did not comport with Dr. Alvarez-Sander's opinion. R.24. This derives support from Smith's history and records detailed by the ALJ. For instance, Smith had no mental health treatment records from 2016 to 2017,

9

despite alleging a disability onset date of May 31, 2016. R.22. Treatment records also support the ALJ's finding that Smith's increased mental health problems correspond to deaths in her family or other situational problems. R.22; *see* R.384, 406 (Mar. and Apr. 2018 records after husband's death in December 2017, and while Smith was helping her 92-year-old father); R.493 (Mar. 4, 2019 note that the anniversary of her husband's death "was hard").

Medical records further substantiate the ALJ's conclusion that medication has improved Smith's condition, such that she can "do simple work with limited social interaction ...." *See* R.22. Notes from May 2018 indicate that, after being prescribed new medication, Smith "felt a change in her depression really quick" with "[i]mproved energy and motivation," so much so that she "completed putting together a trampoline for the grandkids." R.439. A few months later, Smith indicated that she was still "doing well with current meds" and her "energy and motivation improved." R.438 (Aug. 14, 2018 notes).

Indeed, just a few weeks after Dr. Alvarez-Sanders examined Smith, R.472 (Sept. 5, 2019), Smith reported to a different clinician that she was *not* feeling depressed, that her mood had improved, and she had good energy. R.565 (Sept. 23, 2019 note); *see also* R.22 (citing this note as Ex. 5F). Smith reported similar improvements in January 2020. R.550 (not feeling depressed, mostly stable, "doing okay," with good energy); *see also* R.22 (discussing

Exhibit 8F/5). In November 2020, Smith reported "doing pretty good lately" and feeling less depressed. R.628; *see also* R.22 (citing this record). Smith noted again that the medications had improved her condition, such that she went camping with a friend and "had a good time." R.628.

In addition, the ALJ emphasized the uncontroverted fact that Smith "has been the caretaker to her husband, elderly father, son, and grandchild" during the entire period she claims to have been disabled. R.22; *see, e.g.*, R.438-39 (Aug. 2018 record noting that Smith was caring for her 92-year-old father and raising a 12-year old grandson); R.495 (noting that Smith left her job in 2017 to care for her husband); R.491-93 (Sept. 2020 record noting that she has been raising her grandson since at least August 2018 and living with her son since at least March 2019). And despite reporting an occasional lack of motivation to do so, Smith reported being able to perform chores like laundry, loading the dishwasher, and taking out the trash; to prepare simple meals; to take medications without reminders, to drive; and to play games. *See* R.22 (collecting cites to medical records). Smith also exhibited an ability to get along with others, as reflected by her excursions shopping in stores, spending time with friends and family, and living with others. *Id.* And the ALJ also observed that Smith as recently as November 2020 told a clinician that she was "considering rejoining the workforce part time." R.22 (citing R.629); *see also*

11

R.491 (same note in Sept. 14, 2020 record); *see also* R.522 (similar note in May 5, 2020); R.536 (similar note in Mar. 10, 2020).

All this evidence discussed in the ALJ's opinion underscores that the ALJ had a reasonable basis for finding that Dr. Alvarez-Sanders' opinion that Smith cannot cope with the pressures and stress of the work environment is inconsistent with other record evidence. *See* 20 C.F.R. § 404.1520c(c)(2). This Court cannot reweigh that determination, which the ALJ properly made. *See Brown*, 192 F.3d at 496; *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

        2.    *The ALJ was not required to obtain additional medical opinions to resolve Smith's RFC.*

In addition to rejecting Dr. Alvarez-Sanders' conclusion—although not her underlying findings—the ALJ also rejected an opinion of state agency mental health consultants, Dr. Richard Campa (initially) and Dr. W. Miller Logan (at reconsideration) that was *unfavorable* to Smith. R.23. Those consultants concluded that Smith can "maximally understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting." *Id.*; R.97 (Dr. Logan); R.117

(Dr. Campa). But the ALJ discounted that opinion because the consultants did not have all of Smith's medical records and had not examined Smith. R.23.

Smith, however, argues that the ALJ's rejection of all these functional opinions left the ALJ without an adequate basis to formulate the RFC. Dkt. 16 at 9-11. She contends the ALJ had to further develop the record by obtaining another mental health opinion. Dkt. 19 at 1-3. But "[t]he regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when he finds all medical opinions to be unpersuasive." *West v. Kijakazi*, 2022 WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022); *see also Wilson v. Kijakazi*, 2022 WL 17742005, at *5 (S.D. Tex. Nov. 17, 2022) (quoting and applying this principle), *report and recommendation adopted*, 2022 WL 17738736 (S.D. Tex. Dec. 16, 2022). To the contrary, the Fifth Circuit has explained that the absence of a medical source opinion about a claimant's ability to work does not, alone, make the record incomplete. *Ripley*, 67 F.3d at 557. Rather, the question is "whether the decision of the ALJ is supported by substantial evidence in the existing record."[4] *Id.*

---

[4] Smith's cited regulations add nothing because they merely authorize, but do not require, the ALJ to obtain a consultative examination under specified circumstances. 20 C.F.R. §§ 404.1519a(b), 416.919a(b)); Dkt. 19 at 2 (citing these regulations).

Indeed, the Fifth Circuit recently upheld an ALJ's determination of an RFC without obtaining a consultative examination, despite the ALJ's rejection of other expert opinions in whole or part. *See Webster*, 19 F.4th at 719-20. There, the record was "replete with medical documents that spanned years." *Id.* at 720 (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). And given the expansive medical records, nothing suggested that the ALJ "needed any more medical information to reach an informed decision about whether [the claimant] was disabled." *Id.*

The same is true here. As detailed *supra*, Part II.A.1, Smith's medical records—viewed as a whole—supplied adequate information to formulate the RFC. The findings of Dr. Alvarez-Sanders indicated that Smith has average memory, concentration, judgment, and insight, and can perform simple work that requires following multi-step directions. R.474-75; *see also* R.24 (ALJ noting this finding). Moreover, records spanning years reflect that medication had controlled Smith's depression. *See, e.g.*, R.439 (May 8, 2018 note); R.438 (Aug. 14, 2018 note); R.565 (Sept. 23, 2019 note that Smith was not feeling depressed); R.550 (Jan. 2020 note, similar); R.628 (Nov. 2020 note). Those records further indicate that Smith was able to care for others, perform basic chores, and venture out to shop and spend time with friends and family. *See* R.22 (discussing the records). As indicative of Smith's improved condition,

various treatment notes from March through November 2020 state that Smith was considering resumption of part time work. *Id.* (citing R.629); R.491, 522, 536. And contrary to Smith's assertion, Dkt. 19 at 3, all these records support the ALJ's conclusion that Smith's subjective complaints about the severity of her mental impairments did not comport with the objective medical evidence. *See* R.22 (finding that medical records "do not support the extent of the alleged severity of symptoms and limitations"); c*f. Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (instructing that "subjective evidence need not be credited over conflicting medical evidence").

In sum, given the ALJ's reliance on years of medical records, coupled with expert findings that were deemed persuasive, the ALJ did not err by formulating Smith's RFC without obtaining another medical opinion. *See, e.g.*, *Wilson*, 2022 WL 17742005, at *5 (explaining that ALJ's reliance on full records, treatment notes, the claimant's testimony, and relevant medical opinions showed that "[t]his is not lay interpretation of the evidence"). To the contrary, what Smith "characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [Smith's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Substantial evidence supports the RFC.

### B. The ALJ addressed Smith's ability to handle stress.

Smith also asserts that the ALJ was required to address Smith inability to handle stress and erred by failing to do so. Dkt. 16 at 12 (relying on Social Security Ruling 85-15). The Commissioner responds that the ALJ did address this issue, Dkt. 17 at 6, and the Court agrees.

The SSA opinion cited by Smith emphasizes the "importance of thoroughness" in evaluating the impact of stress of the workplace on an individualized basis because "the mentally impaired have difficulty accommodating to the demands of work and work-like settings." *See* SSR 85-15, 1985 WL 56857 (1985). Here, the ALJ emphasized that "the overall mental health records reflect the claimant is responding well to treatment and medication" and that nothing indicated "she could not do simple work with limited social interaction due to not liking to be around people." R.22. She could "perform chores including laundry, load dishwasher, and take out the trash," and she "prepares simple meals, takes medications without reminders, and live[s] with others." *Id.* She has been a caregiver to her husband, father, and grandson. *Id.* And as discussed *supra*, Part II.A.1, these findings are supported by evidence in Smith's medical records and provide a reasonable basis for rejecting Dr. Alvarez-Sanders's opinion that Smith cannot handle the

stress associated with a work environment. Accordingly, the ALJ's decision should be affirmed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment (Dkt. 14), **DENY** Plaintiff's motion for summary judgment (Dkt. 15), and **AFFIRM** the ALJ's decision.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on March 1, 2023, at Houston, Texas.

*Yvonne Y. Ho*
_____
Yvonne Y. Ho
United States Magistrate Judge